UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EQUALNET INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | |
| § | CIVIL ACTION NO. H-04-3895 |
| JORGE BELLAS § | |
| and § | |
| TELEFYNE INC., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court in this breach of contract action is Plaintiff EqualNet Inc.'s ("EqualNet") motion for summary judgment. After considering the parties' filings and the applicable law, the Court finds that the motion, Docket No. 41, should be and hereby is **GRANTED IN PART** and **DENIED IN PART** and that summary judgment should be and hereby is **GRANTED** for Telefyne on its counterclaim against EqualNet.

### I.   BACKGROUND

On May 30, 2003, EqualNet entered into an Asset Purchase Agreement (the "APA") with an entity named in the APA as Tele-Direct, Inc. ("Tele-Direct") and described as a Nevada corporation. Defendant Jorge Bellas ("Bellas") signed the APA as president of Tele-Direct and on its behalf. The APA represented the parties' agreement that EqualNet would purchase a prepaid phone card and cellular telephone business from Tele-Direct. The APA provided that EqualNet was to pay Tele-Direct (1) an initial cash down-payment of $400,000 and (2) 25% of the revenue generated by the business for the six months following the closing, in an amount of no less than $200,000 and no more than $600,000. Thus, the total sale price was to fall between $600,000 and $1,000,000.

Also on May 30, 2003, EqualNet entered into a Services Agreement (the "SA") with Defendant Telefyne Inc. ("Telefyne"), under which Telefyne was to provide telecommunications services to EqualNet in exchange for monthly payments. In essence, the plan was for EqualNet to sell prepaid calling cards to commercial vendors, who would then resell the cards to consumers. When the consumers used the cards, Telefyne would provide the telephone service, for which it would then send an invoice to EqualNet.

EqualNet operated the phone card and cellular business, using Telefyne's services, from May 30, 2003 until January 3, 2004. From the outset, EqualNet was almost continuously delinquent in making payments due to Telefyne, despite the fact that EqualNet received payment for the cards from the vendors before Telefyne provided any service to the final holders of those cards. On January 2, 2004, Telefyne terminated the SA on the ground that EqualNet had accumulated past-due payment obligations totaling $173,527.98. EqualNet claims that the termination forced it into bankruptcy, completely destroying its business.

EqualNet subsequently filed the instant suit in state court. Defendants removed to this Court, where Telefyne asserted a counterclaim for the past-due payments. EqualNet moved for summary judgment on both its and Telefyne's claims. On June 13, 2006, this Court notified EqualNet, as required by FED. R. CIV. P. 56(c), that the Court would also consider granting summary judgment in favor of Defendants on EqualNet's claims and Defendants' counterclaims. *See Celotex*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments, *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.");

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir. 1994) (same).   Accordingly, the Court now evaluates each of the parties' claims in light of the competing summary judgment motions.

## II.   ANALYSIS

### A.   EqualNet's Objections to Defendants' Summary Judgment Evidence

As a threshold matter, EqualNet objects to the Court's consideration of Bellas's affidavit as summary judgment evidence.  EqualNet argues that Bellas has not demonstrated personal knowledge of the course of negotiations between the signatories to the APA or of EqualNet's knowledge, or lack thereof, that Tele-Direct and Teledirect Communications, Inc. ("Teledirect") were one and the same entity.  The Court finds these objections to be without merit, particularly in light of EqualNet's claim that Bellas is personally liable on the contract.  As the representative of the seller, Bellas obviously participated in the sale negotiations and has personal knowledge of the representations made by the parties during those discussions.  Moreover, his testimony that EqualNet used various iterations of the name Teledirect during those negotiations supports his assertion that both parties knew the meanings of the terms that they used.  Accordingly, EqualNet's objections to the affidavit are overruled.

### B.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  *See* FED. R. CIV. P. 56(c). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.*

### C.     EqualNet's Breach of Contract Claim Against Bellas

EqualNet argues that Bellas is, in his individual capacity, a party to the APA, because he signed on behalf of an entity – Tele-Direct – that does not exist. EqualNet further urges the Court to find that, because the company that actually owned the phone card and cellular business – Teledirect – was not a party to the contract, EqualNet never in fact received title to the business, and Bellas is therefore liable for breach of contract. Bellas contends that he signed the APA in his capacity as president of Teledirect, not in his individual capacity; that both parties to the APA knew that Tele-Direct and Teledirect were one and the same entity; and that EqualNet did receive title to the business on May 30, 2003, as is evidenced by the fact that EqualNet concededly operated the business for the remainder of 2003.

"[A] contract or obligation may be entered into by a person under any name he may choose to assume so long as he does not assume a name for the purpose of defrauding other persons through a mistake." *Gregory v. United States*, 253 F.2d 104, 111 (5th Cir. 1958). Moreover, "[e]quity may reform an instrument where, as a result of mistake, error, or misprision on the part of the scrivener or draftsman, it fails to conform

to, or speak, the real or actual agreement between the parties, and this rule has been applied no matter how the mistake occurred." *Temple Elec. Supply, Inc. v. Simmons*, 328 S.W.2d 931, 933-34 (Tex. Civ. App. — Austin 1959, writ ref'd n.r.e.) (internal quotation marks omitted).

Here, EqualNet does not argue that Teledirect or Bellas intended to defraud EqualNet by altering Teledirect's name such that the contract became unenforceable. In fact, it is EqualNet that now seeks to prove the contract invalid and avoid the obligations that it creates. In light of the evidence indicating that the substitution of Tele-Direct for Teledirect was a scrivener's error, and in the absence of any evidence that it was made for a nefarious purpose, the Court declines to nullify the parties' agreement. Because, therefore, Teledirect and not Bellas was the real party in interest to the APA, Bellas cannot be personally liable for any alleged breach. Accordingly, summary judgment is **GRANTED** for Bellas on EqualNet's breach of contract claim against him, which is hereby **DISMISSED WITH PREJUDICE**.

### D. EqualNet's Breach of Contract Claim Against Telefyne

EqualNet also argues that Telefyne breached the SA by terminating it without first providing EqualNet with a thirty-day grace period, following written notice of delinquency, within which to cure the debt. As support for this contention, EqualNet points to paragraph 7.1.7 of the SA, which provides that:

> Upon an event of default, the non-defaulting party may (i) suspend the processing and/or acceptance of new Service Orders, (ii) terminate this Agreement and all associated Service Orders, (iii) declare all amounts payable by the other party due and payable, and/or (iv) exercise all other remedies available to it under this Agreement or otherwise available. Each party's rights and remedies shall be cumulative and the exercise [of] or failure to exercise any particular right or remedy shall not prevent a party from exercising any other right or remedy.

(Pl.'s Mot. for Summ. J., Ex. 3, at 8-9 ¶ 7.1.7.)

>The SA next defines an event of default:
>
>The following events shall each constitute an "Event of Default":
>7.1.7.1.1. a party shall fail to pay when due any amount owed to the other party and such failure shall continue unremedied for 30 days after written notice thereof has been given to the defaulting party;
>7.1.7.1.2. a party shall fail to perform or observe in any material respect any material covenant contained in this Agreement and such failure shall remain unremedied for 14 days after written notice thereof shall have been given to the defaulting party by the non-defaulting party (unless another notification and cure period is applicable to such matter under the specific terms of the provisions giving rise to such right, in which event such other time period shall apply); or
>7.1.7.1.3. the institution of any proceeding, voluntary or involuntary, in bankruptcy, insolvency, dissolution or liquidation by or against a party, if such proceeding is not dismissed within 45 days.

(*Id.*)

Telefyne argues that the default provision, with its thirty-day notice requirement, is inapplicable here, because Telefyne terminated the SA pursuant to paragraph 7.1.4, which provides as follows:

>Termination by TELEFYNE.  TELEFYNE may terminate this Agreement at any time if (i) EQUALNET fails to pay when due any amount owed to TELEFYNE or any Affiliate, except for amounts EQUALNET is in good faith disputing; (ii) EQUALNET materially breaches this Agreement and fails to cure such breach within 30 days after notice of such; (iii) EQUALNET becomes insolvent or makes an assignment for the benefit of creditors, or a trustee or receiver is appointed to manage EQUALNET's business, or (iv) a statutory, judicial, regulatory, rate or tariff change, or event beyond the reasonable control of TELEFYNE, makes it impossible or commercially impractical, in TELEFYNE's sole discretion, for TELEFYNE to continue to provide Services.

(*Id.* at 8 ¶ 7.1.4.)

After much briefing and argument by the parties, the Court reluctantly concludes that the default and termination provisions cited by the parties are irreconcilable.

Moreover, the general principles of contract interpretation are unhelpful here: both EqualNet and Telefyne – along with EqualNet's secured lender, a non-party to the SA – participated in the drafting of the agreement, thus excepting it from the doctrine that ambiguous contract language is to be construed against the drafter. *See, e.g.*, *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 947 n.20 (5th Cir. 1981). Similarly, the two paragraphs are equally specific concerning different subjects – paragraph 7.1.4 is specific as to party, while paragraph 7.1.7 is specific as to procedure. Accordingly, the Court cannot choose between the two by holding that the more specific provision supersedes the more general. *See, e.g.*, *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002).

Where the intention of the parties cannot be determined from the face of a contract, the Court may look to the surrounding circumstances to determine that intent. *See, e.g.*, *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 992 (5th Cir. 2001) ("Parol[ ] . . . evidence as to surrounding circumstances and intent may be brought in where the contract is ambiguous . . . .") (internal quotation marks omitted). Here, Bellas has provided testimony that the intent of the two parties to the SA was always that Telefyne would be able to terminate that agreement without notice or opportunity to cure delinquency. In response, EqualNet has submitted the affidavit of Gary Pentecost, a director of EqualNet's parent company, who negotiated the SA on behalf of EqualNet. In the affidavit, Pentecost testifies that, although Telefyne (through Bellas) was strongly opposed to the inclusion of the thirty-day notice-and-cure provision, it eventually agreed to the clause's insertion in the SA, after it became clear that EqualNet's lender would not otherwise provide EqualNet with the funds for the down payment.

In light of the conflicting testimony, the Court finds that construction of the contract provisions at issue will turn upon an assessment of the credibility of the testimony offered by each party. Because credibility determinations are reserved for the trier of fact, EqualNet's breach of contract claim against Telefyne cannot be resolved at this stage. Accordingly, EqualNet's motion for summary judgment is **DENIED** as to that claim.

### E.   Telefyne's Counterclaim for the Past-Due Payments

EqualNet also seeks summary judgment on Telefyne's counterclaim for (1) the past-due amounts that had accrued under the SA prior to its termination and (2) costs incurred after termination but arising from actions taken while the SA was in effect (in other words, the costs of service provided by Telefyne after termination to holders of cards sold by EqualNet before termination). EqualNet argues that Telefyne cannot seek to enforce a contract that it has breached and therefore cannot recover any damages at all.

It is, of course, true that, "[w]hen a party materially breaches a contract, the other party may treat the contract as ended and cease performance." *Interceramic, Inc. v. South Orient R.R. Co.*, 999 S.W.2d 920, 924 (Tex. App. – Texarkana 1999, pet. denied). As explained above, however, the Court cannot resolve the breach of contract issue at this stage of the proceedings, and thus EqualNet is not entitled to summary judgment on Telefyne's counterclaim.

Moreover, the very precedents cited by EqualNet indicate that a breaching party may enforce obligations incurred while the contract was still in force. *See id.* (""[A] party who fails to perform his obligation may not thereafter enforce the *remaining* terms of the contract against the other party.") (emphasis added); *Willis v. Donnelly*, 118

S.W.3d 10, 40 (Tex. App. – Houston 2003) (same), *rev'd on other grounds*, No. 04-0409, 2006 WL 1506258 (Tex. June 2, 2006); *II Deerfield Ltd. P'Ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 265 (Tex. App. – San Antonio 2001, pet. denied) (same).  Neither these precedents nor any others of which the Court is aware support Plaintiff's attempt to reap a windfall from Telefyne's alleged breach by avoiding fulfillment of obligations incurred prior to that breach and pursuant to the then-enforceable contract.  On the contrary, all of the case law offered by EqualNet is careful to distinguish between performance tendered by a breaching party *prior to* the breach and performance *after* the breach.

That distinction is dispositive.  *See* Joseph M. Perillo, *Restitution in the Second Restatement of Contracts*, 81 COLUM. L. REV. 37, 49 (1981) ("[T]he party in breach is entitled to restitution of 'any benefit he has conferred . . . in excess of the loss that he has caused by his own breach,' whether or not his breach was willful.") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 357(1)(a)).  This rule takes into account the interests of the non-breaching party:

> The countervailing interests of the injured party are protected in four ways.  First, the defaulting party's right to recovery is subject to the aggrieved party's right to offset his damages.  Second, the measure of benefit is limited to the actual enrichment and cannot exceed a ratable portion of the contract price.  Third, restitution is denied to the extent that the criteria for a valid liquidated damages clause are present.  Fourth, restitution is denied if the aggrieved party seeks and is entitled to specific performance.

*Id.* at 49-50.

Telefyne's obligation to provide service to the end user of a card arose when EqualNet sold the card.  (*See* Pl.'s Mot. for Summ. J., Ex. 3, at 2 ¶ 2.1 ("TELEFYNE will provide calling card services to the customers of EQUALNET.").)  Accordingly, the Court finds that Telefyne is entitled to damages arising from service provided to holders

of cards sold before Telefyne terminated the SA, regardless of when that service was provided.  Summary judgment is therefore **GRANTED** for Telefyne on its counterclaim.  Because additional evidence and resolution of EqualNet's breach of contract claim against Telefyne are required to establish the precise amount of the damages to which Telefyne is entitled, the issue of damages is reserved for trial.

### III.    CONCLUSION

Because the evidence indicates that Bellas signed the APA on behalf of Teledirect, the real party in interest, summary judgment is **GRANTED** for Bellas on EqualNet's breach of contract claim against him, which is **DISMISSED WITH PREJUDICE**.  Because EqualNet concedes that Telefyne tendered performance under the contract and was not paid for that performance, and because fundamental principles of contract law and theory support restitution to a breaching party for partial performance, summary judgment is **GRANTED** for Telefyne on its counterclaim for damages, in an amount to be ascertained at trial.  Conflicting testimony renders the Court unable to determine the intent of the parties to the SA regarding termination procedures, and summary judgment is therefore **DENIED** on EqualNet's breach of contract claim against Telefyne.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 28th day of June, 2006.


*/s/ Keith P. Ellison*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**